UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-10015-CR-KING

UNITED STATES OF AMERICA

vs.

DARWIN JOSE DELUQUE LARRADA,

      **Defendant.**
_____/

**GOVERNMENT'S TRIAL BRIEF REGARDING
VARIOUS EVIDENTIARY ISSUES EXPECTED TO ARISE AT TRIAL**

The United States submits this Trial Brief regarding various evidentiary issues expected to arise at trial in order to notify the Court of them in advance and facilitate the Court's consideration of them prior to and during trial.

    I.    <u>DEA Agent Testimony about Distribution Quantity</u>

The Government expects to solicit testimony from the Drug Enforcement Administration case agent that the packaging and quantity of the cocaine seized in this case (over 300 kilograms) are consistent with distribution, not personal use. This is precisely the type of testimony the Eleventh Circuit has allowed from a law enforcement witness not proffered as an expert. <u>See, e.g.</u>, <u>United States v. Jones</u>, 218 F. App'x 916, 917-918 (11th Cir. 2007) (approving lay testimony "that, through his experience, Officer … had learned that the quantity and packaging of narcotics can indicate whether narcotics are intended for distribution and that the … quantity seized in this case indicated that it was intended for distribution."). The <u>Jones</u> court reiterated that "officers can testify as lay witnesses 'based upon their particularized knowledge garnered

from years of experience within the field.'" Id. at 917 (quoting Tampa Bay Shipbldg. & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003).

Any defense objection that this proposed testimony is only permitted by a designated expert, or should not be allowed because it is an ultimate issue for the jury to decide, should be overruled.

II.     Sketch of the Go-Fast Vessel

A hand-drawn sketch of the vessel intercepted in this case was made contemporaneously by one of the United States Coast Guard officers who stopped and boarded the vessel. That officer, Blaine Packard, will testify at trial. The Government intends to have Officer Packard authenticate the sketch, to offer it into evidence, and to have Officer Packard refer to his sketch during his testimony. Defense has indicated that it does not see how the sketch is admissible even with the proper foundation laid.

The Government submits that the sketch is admissible in at least three ways. First, it is a record of a regularly conducted activity and all of the requirements of Federal Rule of Evidence 803(6) will be satisfied (that is, the sketch was made at the near the time of the vessel's interdiction and boarding by someone with knowledge; the sketch was kept in the course of a regularly conducted activity -- vessel inspections and seizures at sea -- of an organization, the United States Coast Guard; making the sketch was a regular practice of that activity; these conditions will be shown by the testimony of a custodian or other qualified witness -- Officer Packard and/or Lieutenant Cassiano; and the defense will not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness). See Fed. R. Evid. 803(6)(A)-(E); see also Rhoads v. Virginia-Florida Corp., 476 F.2d 82, 85-86 (5th Cir.

2

1973)[1] (out-of-court drawing not admissible because "[v]erification required at minimum a showing by the testimony of some competent witness that the lines of the drawings were correct representations of the actual physical characteristics of the land and objects which they purported to show. … Generally, when a survey is to be used as direct evidence the author appears, establishes his competency, and testifies to the accuracy and manner of his work.").

Second, the sketch is not hearsay because it is the functional equivalent of Officer Packard drawing the sketch at trial, and admitting it will merely facilitate a more efficient use of time for the jury (and everyone else involved with the trial). See Fed. R. Evid. 102 ("These rules should be construed so as to … eliminate unjustifiable expense and delay …"); see also Rhoades, 476 F.2d at 85-86 (out-of-court drawing admissible when its author appears to testify).

Third, at a minimum, the sketch should be admitted as an aid to the jury's understanding of Officer Packard's oral testimony about the dimensions and other characteristics of the vessel. See id. at 87 (suggesting out-of-court drawings could have been "offered, admitted or utilized for the limited and ancillary purpose of explaining oral testimony of witnesses who referred to them" even where the creators of the drawings did not testify).

   III.   Capsizing of the Go-Fast Vessel

After the Coast Guard seized the go-fast vessel on which the defendants were travelling and the cocaine thereon and detained the defendants, three Coast Guard officers remained on the go-fast vessel with the contraband and the defendants and guided the go-fast vessel as it followed the "mother ship," a Dutch patrol vessel on which the Coast Guard team was deployed. The Dutch vessel and the go-fast vessel were proceeding to rendezvous with a Coast Guard vessel in order to transfer the defendants and the contraband for transportation to Key West, Florida.

---

[1] Binding precedent in the Eleventh Circuit pursuant to Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

During this voyage, the go-fast vessel struck the stern of the mother ship and became swamped in its wake. The go-fast vessel capsized, and all of the passengers (three Coast Guard officers and the four defendants) ended up in the sea. They remained in the water together for about 95 minutes before being rescued by a small boat from the mother ship.

The Government provided in discovery extensive materials (about 80 pages, several photographs, and a video recording) related to the Coast Guard investigation of the accident.

It is possible that at trial the defense may focus on the capsizing accident. The Government recognizes that limited cross-examination of Coast Guard witnesses about the incident is probably permissible. However, the capsizing incident is wholly irrelevant to the material issues of fact in this case and risks distracting the jury from them. (The Government intends for one or more of its witnesses to briefly describe the incident merely for completeness in telling the story of the interdiction on the high seas and transportation of the defendants to the United States.) It relates to absolutely no element of the crimes charged.

Consequently, the Government requests that the Court limit the defense's questioning or presentation of evidence about the accident. See Fed. R. Evid. 401, 402 ("Irrelevant evidence is not admissible."); see also Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The Court should not allow this criminal drug trafficking trial to devolve into a civil trial about liability for the capsizing of the go-fast vessel.

WHEREFORE, the United States respectfully requests that the Court make appropriate rulings prior to or during trial regarding the issues set forth above.

Local Rule 88.9 Conferral Certification

The undersigned has conferred with defense counsel in a good faith effort to resolve the issues raised in the motion. After resolving one issue and narrowing another issue, the remaining differences of position are as set forth above.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: s/Robert T. Watson
Robert T. Watson
Assistant United States Attorney
Florida Bar No. 679429
robert.watson4@usdoj.gov
United States Attorney's Office
James Lawrence King Federal Justice Building
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9043

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was filed with CM/ECF on April 26, 2016, thereby serving a copy on all counsel of record.

s/Robert T. Watson
Robert T. Watson